MARION PYLES

*v.*

OTTO C. BOLES, WARDEN OF THE WEST VIRGINIA
PENITENTIARY

(No. 12280)

Submitted January 14, 1964.    Decided April 7, 1964.

466.

468

CALHOUN, JUDGE, dissenting.

*C. Donald Robertson,* Attorney General, *Claude A. Joyce, Albert L. Sommerville,* Assistant Attorneys General, for plaintiff in error.

*Rickey & Chase, J. K. Chase, Jr.,* for defendant in error.

HAYMOND, PRESIDENT:

In this habeas corpus proceeding instituted in the Circuit Court of Marshall County, West Virginia, April 1, 1963, and now in this Court upon writ of error, the petitioner, Marion Pyles, seeks a writ to require the defendant, Otto C. Boles, Warden of the West Virginia Penitentiary, to release the petitioner from confinement in the penitentiary to which he was committed by a judgment of the Circuit Court of Monongalia County, West Virginia, rendered June 5, 1961, which sentenced the petitioner to be confined in the penitentiary of this State for a period of sixty years.

The petitioner contended that the indictment charging him with the crime of kidnapping John W. Nine was void and that the circuit court was without jurisdiction to try and convict the petitioner upon the indictment and to impose the sentence of confinement in the State penitentiary.

Upon the hearing upon the petition, the amended return of the defendant to the petition, the demurrer and the motion to quash of the defendant, and the argument of the attorneys in behalf of the respective parties, the circuit court, by final order entered June 13, 1963, award-

ed the writ applied for by the petitioner and ordered the defendant forthwith to release the petitioner from his confinement in the West Virginia Penitentiary. To that judgment this Court awarded this writ of error and supersedeas September 23, 1963, upon the application of the defendant.

On May 1, 1961, during the April 1961 Term of the Circuit Court of Monongalia County, West Virginia, the petitioner, Marion Pyles, was indicted under Section 14a, Article 2, Chapter 61, Code, 1931, as amended, for the crime of kidnapping John W. Nine. The indictment, which contains one count, charged that the petitioner in April 1961, in Monongalia County, did unlawfully and feloniously, by force, threat, duress, fraud and enticement, take, confine, conceal and decoy, inveigle and entice away, and otherwise kidnap, in Preston County, West Virginia, and transport within Monongalia County, and hold and detain in that county, against his will and without his consent, John W. Nine, for the purpose and with the intent of taking and demanding advantage, concession and other thing from John W. Nine, and that the petitioner did, with a dangerous weapon, a sawed off shot gun and pistol, unlawfully and feloniously threaten and force John W. Nine, against his will and without his consent, to transport Marion Pyles from Preston County, West Virginia, to and in Monongalia County, West Virginia, to the advantage and concession of Marion Pyles, against the peace and dignity of the State.

The petitioner was tried upon the foregoing indictment in the Circuit Court of Monongalia County on May 15, 1961, and was by the jury found guilty of the offense as charged in the indictment. The State having waived the death penalty, the circuit court by order entered June 5, 1961, sentenced the petitioner to be confined in the penitentiary of this State for a term of sixty years.

The evidence introduced at the trial in the Circuit Court of Monongalia County upon the indictment against the petitioner and any motions made by the petitioner at such trial are not included in the record of this pro-

ceeding and are not before this Court upon this writ of error. The only portions of the record of the criminal proceeding in the Circuit Court of Monongalia County incorporated in the record of this proceeding are the indictment and the court orders which record the verdict of guilty, impose the sentence of imprisonment and commit the petitioner to the warden of the penitentiary.

The principal errors assigned by the defendant for reversal of the judgment of the circuit court are the action of that court in holding, in substance, (1) that the indictment, upon which the petitioner was tried, convicted and sentenced to imprisonment, is void; (2) that the Circuit Court of Monongalia County was without jurisdiction to try and sentence the petitioner upon such indictment; and (3) that the defendant should release the petitioner from his present confinement in the penitentiary. In support of these assignments of error the defendant contends that the indictment sufficiently charges the petitioner with the commission of a single crime in Monongalia County where he was tried and convicted, and that the provisions of the statute, upon which the indictment was based and the petitioner was tried and convicted, describing the punishment to be imposed upon conviction of the statutory offense, do not constitute elements of the offense but merely deal with the character and the extent of the punishment to be imposed under the statute.

On the contrary the petitioner insists that the indictment fails to inform him sufficiently of the crime with which he is charged and is void because it does not fully and plainly inform him of the character and cause of the accusation against him, and because the statute on which the indictment is based creates three offenses with different punishments; that the verdict of guilty returned by the jury is fatally defective because it did not specify the offense of which the petitioner was convicted; that the indictment lays the venue of the offense charged in two counties, and being fatally inconsistent, is, for that reason, void; and that the Circuit Court of Monongalia

County was without jurisdiction to try the petitioner upon the indictment because it fails to lay the venue of the alleged offense in that county.

The statute which creates the crime of kidnapping, for which the petitioner was indicted, tried and convicted, Section 14a, Article 2, Chapter 61, Code, 1931, as amended by Chapter 70, Acts of the Legislature, 1933, Second Extraordinary Session, contains these provisions:

"If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State, or otherwise kidnap any other person, for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime, he shall be guilty of a felony, and, upon conviction, shall be punished with death: Provided, that the jury may, in their discretion, find that he be punished by confinement in the penitentiary, and if the jury so find, he shall be punished by confinement in the penitentiary during his life: Provided further, that, in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without serious bodily harm having been inflicted upon him, but after ransom, money or other thing, or any concession or advantage of any sort has been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than twenty: Provided further, that in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without serious bodily harm having been inflicted upon him, but without ransom, money or other thing, or any concession or advantage of any sort having been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than ten."

Section 14b, of the same article and chapter, provides that the venue of the offense created by Section 14a shall lie in the county where the person was taken, or induced to go away or otherwise kidnapped, in the county where such person was held or detained, or in the county through which such person was conducted or transported.

Though the foregoing statute of this State, which creates the crime of kidnapping, has not been interpreted and applied in any prior decision of this Court and though there is no pronouncement by this Court concerning the character of the offense or the effect of the provisions relating to the punishment that may be imposed upon a defendant who has been found guilty by the verdict of a jury, a somewhat similar federal statute creating the crime of kidnapping, 18 U.S.C.A., Section 1201, has been considered by the federal courts in numerous cases with respect to the character of the offense and the effect of the provisions of that statute relating to the punishment which may be imposed.

The federal statute, to the extent here pertinent, contains these provisions: "(a) Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

Concerning the question whether the federal statute providing the punishment to be imposed creates more than one offense or only one single offense, the holding of the federal courts, expressly or by necessary implication, is that the federal statute creates a single offense of kidnapping, which shall be punished by death if the jury so recommends and the evidence at the trial shows that the victim was released in a harmed condition but that he shall be punished by imprisonment if the evidence

at the trial shows that the victim was released unharmed. *Smith* v. *United States*, 360 U. S. 1, 79 S. Ct. 991, 3 L. Ed. 2d 1041; *United States* v. *Parrino*, 2 cir., 180 F. 2d 613; *Robinson* v. *United States*, 6 cir., 144 F. 2d 392; affirmed, 324 U. S. 282, 65 S. Ct. 666, 89 L. Ed. 944; rehearing denied, 328 U. S. 878, 66 S. Ct. 1017, 90 L. Ed. 1646; *United States* v. *Parker*, 3 cir., 103 F. 2d 857, certiorari denied, 307 U. S. 642, 59 S. Ct. 1044, 83 L. Ed. 1522.

In *Smith* v. *United States*, 360 U. S. 1, 79 S. Ct. 991, 3 L. Ed. 2d 1041, in which the principal question was whether the crime with which the accused was charged and was tried upon an information, instead of an indictment, was a single capital offense under the statute, the prosecution of which must be by indictment, the Supreme Court of the United States, three judges dissenting, held that the federal statute creates the single offense of transporting a kidnapping victim across state lines and that such offense, being a capital offense punishable by death, must be prosecuted by an indictment, even though the imposition of the death penalty depends upon whether sufficient proof that the victim was released in a harmed condition is introduced during the trial. In the opinion the court used this language:

"The charging part of the information against petitioner stated that he 'did knowingly transport in interstate commerce . . . a person, to wit, Alan W. Spearman, Jr., who had been unlawfully seized, kidnaped, abducted, and carried away and held for the safe conduct of the three defendants . . . .' The charge did not state whether Spearman was released harmed or unharmed.

"It has been held by two Courts of Appeals that indictments similar in terms to the charge here were sufficient to support capital punishments despite the absence of allegations that the kidnapping victims were released harmed. *United States* v. *Parrino* (CA 2 NY) 180 F 2d 613; *Robinson* v. *United States* (CA6 Ky) 144 F 2d 392. Cf. *United States* v. *Parker* (CA 3 NJ) 103 F 2d 857. Petitioner contends that these holdings dispose of his case because they make clear that the statute creates a

single offense of kidnapping which *may* be punished by death if the prosecution, at trial, shows that the victim was released in a harmed condition. The Government claims, however, that whether a specific kidnapping constitutes a capital offense requires examination of the evidence to determine whether the victim was released harmed or unharmed; in other words, that the statute creates two offenses: kidnapping without harm, which is punishable by a term of years, and kidnapping with harm, which is punishable by death. Further, the Government contends that the mere filing of an information by the United States Attorney eliminated the capital element of the crime.

"The Courts of Appeals which have been concerned with the statute have uniformly construed it to create the single offense of transporting a kidnapping victim across state lines. We agree with this construction. Under the statute, that offense is punishable by death if certain proof is introduced at trial. When an accused is charged, as here, with transporting a kidnapping victim across state lines, he is charged and will be tried for an offense which *may* be punished by death. Although the imposition of that penalty will depend on whether sufficient proof of harm is introduced during the trial, that circumstance does not alter the fact that the offense itself is one which *may* be punished by death and thus must be prosecuted by indictment. In other words, when the offense as charged is sufficiently broad to justify a capital verdict, the trial must proceed on that basis, even though the evidence later establishes that such a verdict cannot be sustained because the victim was released unharmed."

In *United States* v. *Parrino*, 2 cir., 180 F. 2d 613, in connection with the contention of the defendant that the indictment, upon which the jury returned a verdict of guilty and a sentence of twenty five years was imposed by the court, was insufficient in that it did not state all the essentials of the crime charged, and with relation to the punishment to be imposed under the statute, the opinion contains these statements: "We agree that the

indictment stated all the essentials of the crimes charged, and that it was not necessary to allege that the victim was not released 'unharmed' in order that the jury might recommend the death penalty. That is an allegation going only to the punishment, and, although the accused has to be adequately advised of it, since the jury must pass upon it, it will be enough if he gets the information in season from any source. Indeed, even though the allegation touched one of the elements of the crime itself, the failure to include it would be at worst a 'variance,' and would 'not affect substantial rights,' if the accused were given adequate advance opportunity to answer."

In *Robinson* v. *United States*, 6 cir., 144 F. 2d 392; affirmed, 324 U. S. 282, 65 S. Ct. 666, 89 L. Ed. 944; rehearing denied, 328 U. S. 878, 66 S. Ct. 1017, 90 L. Ed. 1646, a prosecution for kidnapping under 18 U.S.C.A., section 408a, the kidnapping statute in effect before it was amended by 18 U.S.C.A., Section 1201, in connection with the contention of the accused that the kidnapping count did not allege that the victim was liberated from the defendant's custody unharmed, the opinion contains this language:

"This count not only charged the statutory elements of the offense, to wit, that the defendants named therein kidnaped Mrs. Stoll and transported her in interstate commerce and held her for ransom, but it went further and alleged, that while she was in their custody they did 'beat, injure, bruise and harm and aid and abet each other in beating, injuring, bruising and harming the said Mrs. Alice Stoll and did not liberate her unharmed.' It is manifest, therefore, that the demurrer, as to this feature, is a 'speaking demurrer' and is bad.

"But appellant goes further and alleges, that the phrase 'and did not liberate her unharmed' was too indefinite as a basis for the indictment; that the word 'harmed' admits of varying degrees of meaning from slight to grave, and that appellant was entitled to be advised by the indictment as to what particular injuries the Government would insist had been inflicted upon Mrs. Stoll at or before the

time she was liberated. We again point out that the phrase 'and did not liberate her unharmed' did not state an essential part of the offense charged. Appellant might have been convicted without any showing that Mrs. Stoll was liberated at all; or, if she was, whether she was set free either sound or unsound, in mind or body. The punishment provided by the statute varied from imprisonment from one year to life, in the discretion of the court, or to a death sentence 'if the verdict of the jury should so recommend,' and in determining whether it would recommend capital punishment, the jury was entitled to know from the evidence to what extent aggravation was involved. It was for this reason, no doubt, that the phrase 'provided that the sentence of death shall not be imposed by the court if, prior to its imposition, the kidnaped person has been liberated unharmed' was incorporated in both the statute and the indictment. It furnishes a basis for proof as to what extent the offense was aggravated. See *Seadlund* v. *United States,* 7 Cir., 97 F. 2d 742, 748."

In the light of the holdings of the federal courts in the above cited cases concerning the character of the crime of kidnapping and the provisions regarding the punishment to be imposed upon an accused who has been found guilty of that offense by the verdict of the jury, it is clear that the statute, Section 14a, Article 2, Chapter 61, Code, 1931, as amended, creates a single capital offense and not, as the petitioner contends, three separate and distinct offenses; and that the indictment upon which the petitioner was tried and convicted sufficiently charges the single capital offense created by the statute.

It is significant that the provisions of the statute of this State dealing with punishments of not less than twenty years and not less than ten years state that "in all cases where the person against whom *the offense* is committed is returned, or is permitted to return, alive, without serious bodily harm having been inflicted upon him," the punishment shall be for those respective periods of not less than twenty and ten years. This language indicates

clearly that the Legislature, in enacting the kidnapping statute, intended to create and did create one single offense with different punishments dependent upon and determined by the manner in which it is committed and that the statute did not create two or more separate and distinct offenses. See *State* v. *Masters,* 106 W. Va. 46, 144 S. E. 718; *State* v. *Perry,* 101 W. Va. 123, 132 S. E. 368; *State* v. *Joseph,* 100 W. Va. 213, 130 S. E. 451; *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, Ann. Cas. 1918A 1074; *Conley* v. *The State,* 5 W. Va. 522; *State* v. *Razey,* 129 Kan. 328, 282 P. 755, 66 A.L.R. 1225. (Emphasis supplied).

In *State* v. *Perry,* 101 W. Va. 123, 132 S. E. 368, in holding sufficient an indictment containing one count which charged that the defendant unlawfully and feloniously forged a certain described writing and did feloniously alter and attempt to employ the same as true and genuine, knowing it to be forged, with intent to defraud, this Court said: "When several and distinct acts connected with the same general offense and subject to the same penalty are punishable separately and as distinct crimes where committed by different persons, they may be considered as representing steps or stages of the same offense, and combined in the same count, when committed by the same person at the same time."

In *State* v. *Joseph,* 100 W. Va. 213, 130 S. E. 451, in which the indictment contained two counts, the count on which the defendant was tried and convicted charged him with owning, operating, maintaining, possessing and having an interest in a moonshine still. In rejecting the contention of the defendant that the count of the indictment charged him with the commission of more than one offense, this Court said "* * * where a statute provides that an offense may be committed in several different ways, one may be charged with the commission of such offense in any one of such ways, or he may be charged conjunctively, in the same count, with having committed the offense in all of the ways enumerated in the statute. This would only be charging one offense. *State* v. *Wester.* 67 Kan. 810."

In *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, Ann. Cas. 1918A 1074, this Court held that an indictment, charging the defendant, a cashier of a bank, with embezzling money belonging to the bank at various times during a period of approximately three years and stating the aggregate amount of the various sums, charged only a single act of embezzlement.

In the early case of *Conley* v. *The State,* 5 W. Va. 522, this Court likewise held that an indictment charging the defendant with the sale of spirituous liquors without a license at his storehouse and dwelling house in a designated town and county did not charge two distinct sales at different places but merely described the store and dwelling house as constituting one building and one and the same place.

In *State* v. *Razey,* 129 Kan. 328, 282 P. 755, 66 A.L.R. 1225, the court held that an information under which the defendant was prosecuted and convicted and which charged the defendant with violation of a statute in failing to stop and give the name, residence and motor license number of the defendant after an automobile accident did not charge the defendant with more than one offense.

In 5 Wharton's Criminal Law and Procedure, Anderson, Section 1932, the text contains these statements: "When offenses apparently distinct, but arising under the same statute or out of the same transaction, and having the same punishments, are permitted to be embraced in the same count, it is because in the circumstances of the case they constitute, in effect, only one offense. In other words, the rule that one offense only can be charged in one count of an indictment does not preclude the charge in the same count of several acts relating to the same transaction and together constituting only one offense, * * * ." And in Section 1933 of the same treatise is this language: "Statements which are in the nature of a description or inducement, and which are a mere narrative of the facts leading up to the main offense, are not to be understood as charging a second offense in the same count. A count is not bad for duplicity when it sets forth

several overt acts in pursuance of the principal act charged, or when it alleges several acts done by the same person which are only successive stages in the progress of a criminal enterprise, constituting as a whole only one offense, although either, when done alone, might be an offense." The text in 27 Am. Jur., Indictments and Informations, Section 125, is to the same effect.

The provisions of the statute relating to the various punishments to be imposed upon a person convicted of the offense of kidnapping and which punishments depend upon and are governed by the evidence introduced at the trial, do not state or prescribe any element of the offense created by the statute. Those provisions are that the accused upon conviction shall be punished by death but that the jury may in its discretion find that he be confined in the penitentiary, and if the jury so find he shall be punished by confinement in the penitentiary during his life; that in all cases where the person against whom the offense is committed, is returned, or is permitted to return, alive, without serious bodily harm having been inflicted upon him, but after ransom, money or other thing, or a concession or advantage of any sort has been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than twenty; and that in all cases where the person against whom the offense is committed, is returned, or is permitted to return, alive, without serious bodily harm having been inflicted upon him, but without ransom, money or other thing, or any concession or advantage of any sort having been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than ten. As the foregoing statutory provisions relating to the punishment do not state or prescribe degrees or essential elements of the crime of kidnapping, the jury is not required to make any finding with respect to the punishment to be imposed, except in the case in which it finds that the accused should be punished by confinement in the penitentiary for life. There is a difference between the requirements of a verdict of guilty upon an indictment for murder and of a verdict of guilty

480

upon an indictment for kidnapping. The reason for this difference is that in case of murder the statute, Section 15, Article 3, Chapter 62, Code, 1931, unlike the kidnapping statute, requires the jury, if it finds a person indicted for murder to be guilty, to state in its verdict whether he is guilty of the first or the second degree. Likewise under an indictment for murder, if the jury finds the accused guilty of manslaughter which is included within such indictment the jury must state in its verdict whether he is guilty of voluntary or involuntary manslaughter for the reason that those offenses are separate and distinct, constitute different degrees of homicide, and are subject to different punishments. See *State* v. *Foley,* 131 W. Va. 326, 47 S. E. 2d 40; *State* v. *McCoy,* 95 W. Va. 274, 120 S. E. 597; *State* v. *Frey,* 92 W. Va. 323, 114 S. E. 681; *State* v. *Vineyard,* 85 W. Va. 293, 101 S. E. 440. In *State* v. *Vineyard,* 85 W. Va. 293, 101 S. E. 440, on an indictment for murder, after returning a verdict of acquittal of murder and voluntary manslaughter, the jury found the defendant guilty as charged in the indictment but stated that it did not decide between involuntary manslaughter and assault and battery. This Court held such verdict void because it did not convict the defendant of any specific offense. The opinion in that case contains these statements: "Except in instances in which a statute requires it, a verdict of guilty as charged in an indictment for an offense which necessarily includes others, is sufficiently certain. It need not, in such cases, specify the offense or the degree, unless a statute requires it to do so. *Moody* v. *State,* 1 W. Va. 337; *People* v. *Gilbert,* 60 Cal. 108; *State* v. *Treadwell,* 54 Kans. 513; *State* v. *Robb,* 90 Mo. 30." In the early case of *Moody and Koons* v. *The State,* 1 W. Va. 337, point 1 of the syllabus is in these words: "A verdict of 'guilty as charged in the indictment,' is good, although it may contain more than one count."

Inasmuch as the provisions of Section 14a, Article 2, Chapter 61, Code, 1931, as amended, relating to the different punishments to be imposed upon a person who is found guilty of the offense of kidnapping, do not state or prescribe any element of the offense charged in an

indictment for such offense, it is not necessary to allege or deny the matters mentioned in those provisions, the presence or absence of which, according to the proof, controls and determines the character and the extent of the punishment to be imposed. *Smith* v. *United States,* 360 U.S. 1, 79 S. Ct. 991, 3 L. Ed. 2d 1041; *United States* v. *Parrino,* 2 cir., 180 F. 2d 613; *Robinson* v. *United States,* 6 cir., 144 F. 2d 392; affirmed, 324 U.S. 282, 65 S. Ct. 666, 89 L. Ed. 944; rehearing denied, 328 U.S. 878, 66 S. Ct. 1017, 90 L. Ed. 1646.

The general rule recognized and applied in many decisions of this Court is that an indictment for a statutory offense is sufficient if, in charging the offense, it adopts and follows the language of the statute, or uses substantially equivalent language, and plainly informs the accused of the particular offense charged and enables the court to determine the statute on which the charge is founded. *State* v. *Johnson,* 134 W. Va. 357, 59 S. E. 2d 485; *State* v. *Lewis,* 133 W. Va. 584, 57 S. E. 2d 513; *State* v. *The Greater Huntington Theater Corporation,* 133 W. Va. 252, 55 S. E. 2d 681; *State* v. *Taylor,* 130 W. Va. 74, 42 S. E. 2d 549; *State* v. *LaRosa,* 129 W. Va. 634, 41 S. E. 2d 121; *State* v. *Crummitt,* 129 W. Va. 366, 40 S. E. 2d 852; *State* v. *Lucas,* 129 W. Va. 324, 40 S. E. 2d 817; *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553, 163 A.L.R. 1265; *State* v. *McCoy,* 122 W. Va. 54, 7 S. E. 2d 89; certiorari denied, 311 U. S. 683, 61 S. Ct. 59, 85 L. Ed. 441; *State* v. *Tenney,* 117 W. Va. 342, 185 S. E. 468; *State* v. *Wimmer,* 117 W. Va. 498, 186 S. E. 133, 105 A.L.R. 67; *State* v. *Mowery,* 115 W. Va. 445, 176 S. E. 851; *State* v. *Keiffer,* 112 W. Va. 74, 163 S. E. 841; *State* v. *Nazel,* 109 W. Va. 617, 156 S. E. 45; *State* v. *Williams,* 108 W. Va. 525, 151 S. E. 852; *State* v. *McKinney,* 106 W. Va. 299, 145 S. E. 604; *State* v. *Masters,* 106 W. Va. 46, 144 S. E. 718; *State* v. *Boggs,* 103 W. Va. 641, 138 S. E. 321; *State* v. *Brown,* 101 W. Va. 160, 132 S. E. 366; *State* v. *Joseph,* 100 W. Va. 213, 130 S. E. 451; *State* v. *Hudson,* 93 W. Va. 435, 117 S. E. 122; *State* v. *Lantz,* 90 W. Va. 738, 111 S. E. 766, 26 A.L.R. 894; *State* v. *Constable,* 90 W. Va. 515, 112 S. E. 410; *State* v. *Chafin,* 78 W. Va. 140, 88 S. E. 657; *State* v. *Johnson,* 62 W. Va. 154, 57 S. E. 371,

58 S. E. 1025, 11 L.R.A., N.S., 872; *State* v. *Jones,* 53 W. Va. 613, 45 S. E. 916; *State* v. *Pennington,* 41 W. Va. 599, 23 S. E. 918; *State* v. *Boggess,* 36 W. Va. 713, 15 S. E. 423; *State* v. *Gould,* 26 W. Va. 258; *State* v. *Schnelle,* 24 W. Va. 767; *State* v. *Riffe,* 10 W. Va. 794; 42 C.J.S., Indictments and Informations, Section 139c. The allegations of the indictment follow and are substantially the same as the language of the statute and satisfy the foregoing requirement of an indictment for a statutory offense.

The indictment sufficiently charges several acts of the petitioner in Monongalia County which singly or together constitute the commission of the statutory crime of kidnapping by the petitioner in that county. The indictment specifically charges that the petitioner did unlawfully and feloniously, by force, threat, duress, fraud and enticement, take, confine, conceal, decoy, inveigle, entice away and otherwise kidnap and transport, within Monongalia County, and did hold and detain in that county, against his will and without his consent, John W. Nine, for the purpose and with the intent of taking and demanding advantage, concession and other thing from John W. Nine and did also, with a dangerous weapon, unlawfully and feloniously, threaten and force John W. Nine, against his will and without his consent, to transport the petitioner from Preston County, West Virginia, to and in Monongalia County, West Virginia, to the advantage, concession and other thing of the petitioner. Any one or all of the specified acts of taking, confining, concealing, decoying, inveigling, enticing away and otherwise kidnapping and transporting, and holding and detaining the victim, against his will, in Monongalia County, singly or together, constituted the statutory offense. It is true that the indictment also states that the petitioner did unlawfully and feloniously, by force, threat, duress, fraud and enticement, take, confine, decoy, inveigle, conceal, entice away and otherwise kidnap John W. Nine in Preston County, West Virginia, and did also, with a dangerous weapon, unlawfully and feloniously threaten and force John W. Nine, against his will and without his consent, to transport the petitioner from Preston County,

West Virginia, to and in Monongalia County, West Virginia. It was not necessary, however, to charge or prove the acts committed by the petitioner in Preston County to convict him of the acts charged against him and committed by him in Monongalia County which constitute the offense for which he was tried and convicted in that county. The criminal acts committed by him in Preston County did not affect the charge of the offense in Monongalia County and did not form the basis of his conviction in Monongalia County which resulted entirely from and was based upon the acts committed by him in that county.

An indictment based upon Section 14a, Article 2, Chapter 61, Code, 1931, as amended, which specifically charges that the accused did unlawfully and feloniously, by force, threat, duress, fraud and enticement, take, confine, conceal, decoy, inveigle, entice away and otherwise kidnap and transport, within Monongalia County, and did hold and detain in that county, against his will and without his consent, a designated person, for the purpose and with the intent of taking and demanding advantage, concession and other thing from such person, and did also, with a dangerous weapon, unlawfully and feloniously, threaten and force such person, against his will and without his consent, to transport the accused from Preston County, West Virginia, to and in Monongalia County, West Virginia, to the advantage, concession and other thing of the accused, and which also charges the accused with the commission of some of the same acts in Preston County, sufficiently charges the accused with the commission in Monongalia County of the single offense of kidnapping created by the statute and is a valid indictment for that statutory offense.

The allegations in the indictment of the criminal acts committed by the accused in Preston County are not repugnant to or inconsistent with the acts committed by him in Monongalia County, but are immaterial, unnecessary and harmless averments which could have been omitted from the indictment; and such allegations should

be considered and rejected as surplusage. *State v. Mc-Graw,* 140 W. Va. 547, 85 S. E. 2d 849. In that case this Court held in point 1 of the syllabus that "Immaterial, unnecessary and harmless averments, which might be omitted without affecting the charge in an indictment against the accused and which need not be proved, may be properly considered and rejected as surplusage."

By statute and by numerous decisions of this Court surplus matter does not vitiate an indictment which charges an offense in the language of the statute which creates such offense. Section 10, Article 2, Chapter 62, Code, 1931, provides, in part, that no indictment or other accusation shall be quashed or deemed invalid for the omission or the insertion of any other words of mere form or surplusage. This Court has said in many decisions that an indictment which charges an offense in the language of the statute which creates such offense will not be held to be invalid because it contains surplus matter. *State v. Criss,* 125 W. Va. 225, 23 S. E. 2d 613; *State v. Boggs,* 103 W. Va. 641, 138 S. E. 321; *State v. Perry,* 101 W. Va. 123, 132 S. E. 368; *State v. Merico,* 77 W. Va. 314, 87 S. E. 370; *State v. Jarrell,* 76 W. Va. 263, 85 S. E. 525; *State v. McClung,* 35 W. Va. 280, 13 S. E. 654; *State v. Hall,* 26 W. Va. 236; *State v. Lusk,* 16 W. Va. 767.

Though the indictment upon which the petitioner was tried and convicted alleges numerous acts, which singly and together constitute one and the same offense, all such acts may be charged in a single count of an indictment and the prosecution, as a general rule, will not be required to elect upon which charge it will proceed to try the accused. In *State v. Joseph,* 100 W. Va. 213, 130 S. E. 451, this Court held in point 5 of the syllabus that "Where a statute enunciates a series of acts, either of which separately or all together may constitute the offense, all of such acts may be charged in a single count, for the reason that, notwithstanding each act may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense. In such case, the prosecution, as a general rule,

will not be put to an election." The opinion in that case contains these paragraphs:

"The rule is stated in Joyce on Indictments (2nd Ed), section 575, that, if two or more offenses form part of one transaction, and are of such a nature that the defendant may be guilty of both or all, the prosecution will not be put to an election. So in a case in New York it is decided that, where an offense may be committed by doing any one of several things the indictment may, in a single count, group them together and charge the defendant to have committed them all and a conviction may be had on proof of the commission of any one of the things, without the proof of the commission of the others. *Bork* v. *People,* 91 N.Y. 13. So where a statute makes two or more distinct acts committed with the same transaction indictable, each one which may be considered as representing a phase in the same offense, the different acts may be coupled in one count. *Commonwealth* v. *Hall,* 23 Pa. Supr. Ct. 104.

"It is a well settled rule that when a statute enunciates a series of acts, either of which separately or all together may constitute the offense, all of such acts may be charged in a single count, for the reason that, notwithstanding each act may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense. *People* v. *Gusti,* 113 Cal. 177; *Flohr* v. *Territory,* 14 Okla. 477. Mr. Wharton, in his work on Criminal Pleading and Practice (9th Ed), sec. 251, states the law as follows: 'When a statute makes two or more distinct acts connected with the same transaction indictable, each one of which may be considered as representing a phase in the same offense, it has been ruled in many cases that they may be coupled in one count.' "

In *State* v. *Masters,* 106 W. Va. 46, 144 S. E. 718, the defendant was indicted in one count for the violation of a statute which required the operator of a vehicle, in case of an accident, to stop immediately and upon request give his name, address and the number of his operator's license and to render such assistance as may be reasonable or necessary. The sufficiency of the indictment in that case

was challenged on the ground that it charged three separate and distinct offenses in one count. In holding the indictment valid this Court said in the opinion: "In case of accident, where the operator of a motor vehicle fails to stop immediately, he is guilty of an offense; if he does stop, and then drives on without making any attempt to render assistance which he must have seen was reasonable and necessary, he is still guilty of an offense; and if he stops and renders assistance, but refuses, upon request, to give his name, address and number of his operator's license, this, also, constitutes an offense. But if he merely drives on, making no attempt to render assistance or give his name, address and number of his operator's license, the whole transaction involves only one offense, and calls for the imposition of but a single penalty. When a statute makes two or more distinct acts connected with the same transaction, or of the same general nature, indictable, each one of which may be considered as representing a phase in the same offense, they may be coupled in one count, and under the rules of criminal pleading and the established practice of our criminal courts, it is competent for the jury, under this form of indictment, to find the defendant guilty of one or more of such distinct acts, as proofs may warrant. *State* v. *Miller,* 89 W. Va. 84; *State* v. *Jarrell,* 76 W. Va. 363; *State* v. *Calhoun,* 67 W. Va. 666."

In *State* v. *Merico,* 77 W. Va. 314, 87 S. E. 370, this Court held in Point 1 of the syllabus that "An indictment for unlawfully carrying a pistol without a state license is good notwithstanding it charges in a single count that, at the same time, defendant carried all the other weapons forbidden by the statute to be carried."

In 5 Wharton's Criminal Law and Procedure, Anderson, Section 1932, the text uses this language: "It is the general rule that an indictment or information for violation of a statute which creates only one offense, but specifies several different acts, transactions, or means by which it may be committed, may properly allege the offense in one count by charging the accused, in conjunctive terms, with doing any or all of the things specified in the statute, especially when the charge is made in the language of

the statute." In 27 Am. Jur., Indictments and Informations, Section 124, the same rule is stated in the identical language contained in the foregoing quotation.

In Joyce on Indictments, Section 399, the text contains, among others, these provisions: "Where acts of omission or commission are component parts or represent preliminary stages of a single transaction, to set them out is not to charge separate crimes. And it is a general rule that where several acts go to constitute an offense an indictment charging such acts where they are a part of the same transaction is not on this account duplicitous. * * * . So where a statute makes two or more distinct acts committed with the same transaction indictable, each one of which may be considered as representing a phase in the same offense, the different acts may be coupled in one count and it is not regarded as duplicity thus to join successive statutory phases of the same offense. And this rule is well settled and is supported by numerous other decisions."

As already indicated the allegation in the single count of the indictment of the numerous acts committed by the petitioner in Monongalia County and of the acts committed by him in Preston County, all of which singly and together constitute one offense, was proper and did not result in any prejudice to any right of the petitioner, for the reason, as stated in point 5 of the syllabus in *State* v. *Joseph,* 100 W. Va. 213, 130 S. E. 451, that "notwithstanding each act may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense."

Even if the various acts charged against the petitioner constituted separate offenses the joinder of such offenses in separate counts in one indictment would not operate to the prejudice of the accused. *State* v. *Larue,* 98 W. Va. 677, 128 S. E. 116. In that case this Court held in point 4 of the syllabus that "A joinder as separate counts in one indictment of several offenses, which though distinct in point of law, yet spring out of substantially the same transaction, cannot operate to the legal prejudice of the

accused; and he is not entitled as a matter of right in such case to compel an election."

The allegations in the indictment charging the various and specific acts committed by the petitioner in Monongalia County, particularly the acts of taking, confining, concealing, transporting, holding and detaining the victim in that county, sufficiently inform the accused of the character and cause of the accusation against him and satisfy the requirement imposed by Section 14, Article III, of the Constitution of this State that in all trials of crimes and misdemeanors the accused shall be fully and plainly informed of the character and cause of the accusation. If the petitioner upon the trial felt that additional information should have been given him to enable him to make proper defense to the accusation or to inform him of the particular act or acts relied upon by the State for conviction he could have moved the court to require the State to furnish a bill of particulars and to elect the specific act or acts upon which it relied for conviction. The incomplete record of the proceedings upon the trial of the indictment now before this Court upon this writ of error does not show that any such motions were made or denied or that any exception was taken by the petitioner in connection with any such action; and in that state of the record it may be properly assumed that the petitioner did not challenge the sufficiency of the allegations of the indictment concerning the character and cause of the accusation.

The allegations of the indictment which charge the petitioner with the commission of numerous and specific acts in Monongalia County, particularly the acts of taking, confining, concealing, transporting, holding and detaining the victim, John W. Nine, in Monongalia County, are sufficient to lay the venue of the offense in that county. Those allegations also completely satisfy the requirement of the provisions of Section 14b, Article 2, Chapter 61, Code, 1931, as amended, that the venue of the offense of kidnapping shall lie in the county where the person alleged to have been kidnapped was held or detained, or in the county through which such person was conducted or

transported. They likewise fully comply with the requirement of Section 14, Article III, of the Constitution of this State, that trials of crimes, and misdemeanors, unless therein otherwise provided, shall be in the county where the alleged offense was committed, unless upon petition of the accused, and for good cause shown, the trial of the offense is removed to some other county.

The sentence imposed upon the petitioner of confinement in the penitentiary for a period of sixty years is authorized by the provisions of the kidnapping statute which relate to the imposition of punishment upon conviction of that offense. The statute expressly provides that in all cases where the person against whom the offense is committed, is returned, or is permitted to return, alive, without serious bodily harm having been inflicted upon him, but after ransom, money or other thing, or any concession or advantage of any sort shall be paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than twenty, and that in all cases where such person is returned, or is permitted to return, alive, without serious bodily harm having been inflicted upon him, but without ransom, money or other thing, or any concession or advantage of any sort having been paid or yielded, the punishment shall be confinement in the penitentiary for any term of years not less than ten. It appears from the notation at the foot of the indictment that the victim, John W. Nine, gave evidence before the grand jury in connection with the offense on May 1, 1961, and in view of that fact it is clear that he was returned, or was permitted to return, alive, and presumably without serious bodily harm having been inflicted upon him. Whether the victim, though returned or permitted to return, alive and presumably without bodily harm having been inflicted upon him, was required to pay or yield ransom, money or other thing or was not required to pay or yield ransom, money or other thing, does not appear from the record for the reason that the evidence introduced upon the trial, not having been made a part of the record, can not be determined upon this writ of error. In either event, however, the Circuit Court of

Monongalia County, under the provisions of the statute relating to punishment, had jurisdiction to impose the sentence of confinement in the penitentiary for sixty years. In the absence of any showing to the contrary it will be presumed that the evidence supported and justified the sentence imposed by the circuit court.

The law is well established that when the record of a court of general jurisdiction is merely silent with respect to a matter affecting its jurisdiction or the regularity of its procedure, the presumption that it satisfied and complied with all jurisdictional and procedural requirements for the entry of a valid judgment will be accorded prevailing force and effect. *State ex rel. Ashworth* v. *Boles,* 148 W. Va. 13, 132 S. E. 2d 634; *Bowles* v. *Mitchell,* 146 W. Va. 474, 120 S. E. 2d 697; *Rollins* v. *Daraban,* 145 W. Va. 178, 113 S. E. 2d 369; *State ex rel. Black* v. *Pennybacker,* 144 W. Va. 612, 110 S. E. 2d 265; *State ex rel. Browning* v. *Tucker,* 142 W. Va. 830, 98 S. E. 2d 740; *Lieberman* v. *Lieberman,* 142 W. Va. 716, 98 S. E. 2d 275; *Adkins* v. *Adkins,* 142 W. Va. 646, 97 S. E. 2d 789; *State ex rel. Lovejoy* v. *Skeen,* 138 W. Va. 901, 78 S. E. 2d 456, certiorari denied, 349 U. S. 940, 75 S. Ct. 786, 99 L. Ed. 1268; *Lemley* v. *Wetzel Coal and Coke Company,* 82 W. Va. 153, 95 S. E. 646; *State* v. *Lowe,* 21 W. Va. 782. Point 1 of the syllabus in the *Lemley* case contains this language: "The power of a court having jurisdiction over a particular subject matter to render a judgment or decree affecting the same cannot be attacked collaterally, unless it appears from the record of the proceeding in which the judgment or decree is entered that the court acted without jurisdiction." A habeas corpus proceeding is not a substitute for a writ of error or other appellate process, and a valid judgment entered in a criminal proceeding in which the court has jurisdiction of the subject matter and the parties can not be assailed or disturbed in a habeas corpus proceeding. *State ex rel. Nicholson* v. *Boles,* 148 W. Va. 229, 134 S. E. 2d 576; *State ex rel. Lovejoy* v. *Skeen,* 138 W. Va. 901, 78 S. E. 2d 456, certiorari denied, 349 U. S. 940, 75 S. Ct. 786, 99 L. Ed. 1268; *State ex rel. Clark* v. *Adams,* 144 W. Va. 771, 111 S. E. 2d 336, 89 A.L.R. 2d 528, certiorari denied,

363 U. S. 807, 80 S. Ct. 1242, 4 L. Ed. 2d 1149, and the many cases cited in the opinion in that case.

In *State ex rel. Lovejoy* v. *Skeen*, 138 W. Va. 901, 78 S. E. 2d 456, certiorari denied, 349 U. S. 940, 75 S. Ct. 786, 99 L. Ed. 1268, this Court held in point 1 of the syllabus that "A conviction and sentence of a person in a court of competent jurisdiction, in the absence of a showing that the judgment is wholly or partially void, will not be reviewed in a proceeding in habeas corpus." In the opinion in that case this Court said: "A proceeding in habeas corpus is generally, but not in all instances, a collateral attack upon a former judgment, by virtue of which a person is confined in prison. The instant proceeding is a collateral attack on the judgment of the Circuit Court of Logan County sentencing the petitioner to life imprisonment. 'A judgment, valid on its face and rendered by a court of general jurisdiction having jurisdiction of both parties and subject matter, is not open to collateral attack.' *Crickmer* v. *Thomas*, 120 W. Va. 769, 200 S. E. 353; *Newhart* v. *Pennybacker*, 120 W. Va. 774, 200 S. E. 350; *Starcher* v. *Oil Co.*, 81 W. Va. 587, 95 S. E. 28. * * * . A judgment pronounced by a court of competent jurisdiction, valid on its face, will not be disturbed on a writ of habeas corpus, a collateral attack, but the petitioner is left to his remedy by a writ of error. *Schad* v. *McNinch*, 103 W. Va. 44, 136 S. E. 865; *Ex Parte Evans*, 42 W. Va. 242, 44 S. E. 888; *Ex Parte Mooney*, 26 W. Va. 36."

The judgment of the Circuit Court of Monongalia County, which sentenced the petitioner to imprisonment in the penitentiary for a period of sixty years, is a valid judgment and it is not subject to collateral attack in a habeas corpus proceeding.

The judgment of the Circuit Court of Marshall County is reversed and set aside and this proceeding is remanded to that court with directions that the writ of habeas corpus heretofore issued by it be forthwith discharged and the petitioner remanded to the custody of the defendant.

*Reversed and remanded with directions.*

CALHOUN, JUDGE, dissenting:

Very respectfully I dissent. With deference to my associates, I state that I believe the majority opinion glaringly violates various fundamental legal principles, constitutional and otherwise; and that no pertinent authority for its justification can be found in this or any other state.

I agree with the holding of the Court in reference to questions concerning venue and jurisdiction. My dissent relates to matters affecting the validity of the indictment, verdict and sentence, when such parts of the record are considered both separately and as a whole.

Perhaps our initial disagreement stems from the holding, summarized in the first point of the syllabus, that the statute creates but one offense. I am unable to comprehend how a single offense, without any grades or degrees, may have various penalties.

It may involve a quibbling over terminology to dispute whether the statute creates more than one offense; or whether, on the other hand, it creates a single offense having different degrees or grades with different penalties. In either event, a determination of which category the defendant's offense falls into involves a question of fact. A novel and startling feature of the majority opinion is that it apparently leaves to the trial judge, under the general verdict, to determine that factual issue; and takes from the accused the right to have that vital factual issue determined by a jury. I believe that this fundamental issue of fact involves the sufficiency of the indictment, the verdict and the sentence or judgment.

"A verdict is the definitive answer of the jury and is sufficient in form if it decides the question in issue in such wise as to enable the court to enter judgment." 23A C.J.S., Criminal Law, Section 1393, page 1054. A verdict must be responsive to and cover the offense charged. It is always necessary before entering judgment on the verdict that it appear what the jury found or intended to find. *Williams* v. *Commonwealth*, 153 Va. 987, 151 S. E. 151; *State* v. *Frey*, 92 W. Va. 323, pt. 1 syl., 114 S. E. 681. "A

verdict of guilty need not specify the degree of the crime of which accused is convicted, where a particular degree only is charged in the indictment or submitted, as where the indictment charges only the lowest degree of the crime. If, however, a particular degree of an offense is charged, and the jury desires to find accused guilty of a lesser degree, the degree should be specified. Such a verdict should show every element of the lesser offense; but it is generally sufficient to describe the offense in the words of the statute, or their equivalents, and it has been held sufficient to refer to it by its statutory name." 23A C.J.S., Criminal Law, Section 1406, page 1099. A verdict of a jury in a criminal case must always be read in connection with the indictment. The indictment, verdict and judgment in a criminal prosecution should be sufficiently definite, certain and specific to identify the crime involved. *State* v. *Gargiliana,* 138 W. Va. 376, 387-88, 76 S. E. 2d 265, 271. "The judgment and sentence must be responsive to, and in accord with, the verdict of the jury." 24 C.J.S., Criminal Law, Section 1579, page 544. See also *State* v. *Moneypenny,* 81 W. Va. 362, pt. 1 syl., 94 S. E. 540.

In summary, the indictment, verdict and sentence or judgment must be sufficient *on their face* to disclose their complete harmony and responsiveness to each other. It is impossible in this case to look at the indictment, verdict and sentence severally, or to look at the three as a whole and determine specifically for what offense, or what degree of an offense, the accused was sent to the penitentiary.

I have undertaken to examine all the prior decisions of this Court cited in the majority opinion. I have not found a case in which this Court has held that a statute creates a single offense where the statute has defined different factual situations calling for different penalties. I have not found a case in which this Court has held, in case of a statute of this nature, that an indictment or verdict is sufficient without specifying the exact offense, or degree of the offense. I do not believe such a case can be found.

We are not concerned here with the doctrine of "included offenses" under which it is held that a charge of

the greater includes a charge of the lesser offense. *State v. Henson,* 91 W. Va. 701, pt. 1 syl., 114 S. E. 273; *State v. Murdock,* 90 W. Va. 628, pt. 1 syl., 111 S. E. 632; *State v. Tomlin,* 86 W. Va. 300, pt. 2 syl., 103 S. E. 110; *State v. Douglass,* 41 W. Va. 537, pt. 1 syl., 23 S. E. 724; *State v. Howes,* 26 W. Va. 110; 9 M.J., Indictments, Informations and Presentments, Section 29, page 677. In all such cases, however, the jury must, by its verdict, specify the lesser offense of which the accused has been found guilty. I am not aware of any case which has authorized the trial judge to make that factual determination following the return of a general verdict.

I believe cases cited in the majority opinion for the proposition that the statute creates a single offense are clearly distinguishable. Generally speaking, the statutes under consideration in such cases involved a definition of various ways in which a single offense, with a single penalty, might be committed. In *State v. Masters,* 106 W. Va. 46, 144 S. E. 718, involving a charge under the "hit and run statute," the Court stated (106 W. Va. at page 49) that "the whole transaction involves only one offense, and calls for the imposition of *but a single penalty.*" (Italics supplied.) *State v. Miller,* 89 W. Va. 84, 108 S. E. 487, involved a charge that the defendant did sell, give, offer, keep and store for sale alcoholic liquors under a statute thus defining a single offense with a single penalty. To the same effect see *State v. Calhoun,* 67 W. Va. 666, 69 S. E. 1098; *State v. Miller,* 89 W. Va. 84, 108 S. E. 487. *State v. Perry,* 101 W. Va. 123, 132 S. E. 368, involved a charge in a single count of both forgery and uttering. The Court stated (101 W. Va. at pages 125-26): "When several and distinct acts connected with the same general offense and *subject to the same penalty* are punishable separately and as distinct crimes where committed by different persons, they may be considered as representing steps or stages of the same offense, and combined in the same count, when committed by the same person at the same time." (Italics supplied.) *State v. Joseph,* 100 W. Va. 213, 130 S. E. 451, involved a charge of owning, operating, maintaining, having possession of or an interest in a moon-

shine still, under a statute which created a single offense with a single penalty. See also *State* v. *Garcia,* 140 W. Va. 185, 191, 83 S. E. 2d 528, 531. *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, involved a charge that a bank cashier embezzled money of the bank between different dates, designating the aggregate amount. The Court held that but a single offense of embezzlement was charged; and, of course, only one penalty was involved. To the same effect, see *State* v. *Larue,* 98 W. Va. 677, 128 S. E. 116. *Conley* v. *State,* 5 W. Va. 522, involved a charge that the accused sold liquor at his dwelling and at his store. The Court held that the effect of the indictment was to charge that the store and dwelling were in the same building and that, therefore, but a single offense was charged.

I have examined other cases. In *State* v. *Haskins,* 92 W. Va. 632, 636, 115 S. E. 720, 722, the Court stated: "These counts being for the same offense, and for the purpose of meeting the various phases which the evidence might develop, and which, if sustained, would entail *the same punishment,* there is clearly no misjoinder as to them." (Italics supplied.) To the same effect, see *State* v. *Shelton,* 78 W. Va. 1, pt. 1 syl., 88 S. E. 454. In *State* v. *Jarrell,* 76 W. Va. 263, pt. 3 syl., 85 S. E. 525, the Court held that it was proper to charge in a single count that the accused unlawfully carried about his person certain revolvers, pistols, dirks and other weapons named in the statute. To like effect, see *State* v. *Merico,* 77 W. Va. 314, pt. 1 syl., 87 S. E. 370.

None of the cases referred to above involved more than a single offense; none of them involved grades or degrees of an offense; and none involved more than a single penalty. In all such cases, it was clear that only a single offense was involved; and upon a general verdict of guilty as charged in the indictment, the trial judge was called upon merely to impose the single penalty prescribed.

I believe the view I am undertaking to express is sustained by authorities cited in the majority opinion. For instance, 5 Wharton's Criminal Law and Procedure, Anderson, Section 1932, as quoted in the majority opinion,

commences as follows: "When offenses apparently distinct, but arising under the same statute or out of the same transaction, *and having the same punishments,* * * *." (Italics supplied.) Additional quotations from the same volume and from Joyce on Indictments refer to statutes creating a single offense having different component parts, or specifying various ways in which the single offense may be committed.

Section 14 of Article III of the Constitution of West Virginia provides that, in all trials for crime, "the accused shall be fully and plainly informed of the character and cause of the accusation, * * *." That provision has been carefully heeded by the Court, even with a strictness which I have regarded as unduly technical. *State ex rel. Vandal* v. *Adams, Warden,* 145 W. Va. 566, 115 S. E. 2d 489. In that background, I am at a loss to understand how the Court can hold that the indictment in this case meets the constitutional requirement. Indeed, it is difficult to determine how the trial court avoided the necessity of imposing the death penalty. The jury returned a general verdict and did not find that the accused "be confined in the penitentiary," which, as in a murder case, would have made a life sentence mandatory. I believe the general rule is that a general verdict results in a conviction of the highest grade of the offense charged.

It is by no means an inflexible rule that it is sufficient to charge an offense in the language of the statute. That rule must always yield to the paramount requirement that the accused must be fully and plainly advised of the character and cause of the accusation. *State* v. *Ash,* 139 W. Va. 374, syl., 80 S. E. 2d 339; *State* v. *Zitzelsberger,* 129 W. Va. 229, pt. 1 syl., 39 S. E. 2d 835; *State* v. *Garner,* 128 W. Va. 726, pt. 1 syl., 38 S. E. 2d 337; *State* v. *Livesay,* 127 W. Va. 579, pt. 1 syl., 34 S. E. 2d 24; *State* v. *Lake,* 112 W. Va. 665, 166 S. E. 384; *State* v. *Simmons,* 99 W. Va. 702, pt. 1 syl., 129 S. E. 757; *State* v. *Mitchell,* 47 W. Va. 789, pt. 2 syl., 35 S. E. 845.

The primary offense created by the statute is defined as "a felony," punishment for which is the death penalty

or life imprisonment, in the discretion of the jury. Two additional offenses are defined in the two provisos of the statute, one providing for a minimum sentence of twenty years and the other for a minimum sentence of ten years. The accused was entitled to be advised by the indictment which of the three offenses he was called upon to meet. They involve different factual situations. It is impossible to look at the jury verdict and determine of which of the three offenses defendant was found guilty. Certainly, beyond all cavil, it is impossible to look at the sentence imposed and determine that it is responsive to the verdict of the jury.

The majority opinion states that the prosecution waived the death penalty. I do not believe it is so clear that the prosecuting attorney can deprive the jury of the function of making that determination. In the recent case of *Smith* v. *Winters, Judge,* 146 W. Va. 1018, 124 S. E. 2d 240, 244, the Court stated: "The mere fact that the prosecuting attorney stated he was not going to ask for the death penalty did not change the offense. The grand jury indicted the defendant for a capital offense and the petit jury has the authority, under the statute and decided cases relating thereto, to determine whether or not the case is capital from the evidence introduced in the trial of the case."

The majority opinion states that if, at the trial, the accused "felt that additional information should have been given him to enable him to make proper defense to the accusation or to inform him of the particular act or acts relied upon by the State for conviction, he could have moved the court to require the State to furnish a bill of particulars and to elect the specific act or acts upon which it relied for conviction." I am not aware of any case in which this Court has ever held heretofore that the availability to the accused of these motions relaxes or qualifies the constitutional rule relating to the sufficiency of the accusation.

Section 14 of Article III of the Constitution of West Virginia guarantees the right to a jury trial in criminal cases. I do not understand that this provision guarantees

to an accused person in a criminal case a trial by jury of only part of the case. I have never known this or any other similar constitutional provision to be so construed prior to this time.

The accused in this case was entitled, upon a proper indictment, to a jury determination, upon the evidence, of the question whether he should be convicted of the primary offense and whether, in that event, the penalty should be death or life imprisonment. He was also entitled to have a jury determination of the factual question whether his offense comes within the category for which a twenty-year minimum sentence is provided; or whether the factual situation is such that he falls in the most favorable category of guilt, for which a minimum sentence of ten years is provided. All such matters are supremely vital to the accused, because therein involved is a matter of his liberty in the whole area from the minimum sentence of ten years to the death penalty. In that area the indictment, verdict and the judgment are not matters to be treated casually or lightly.

It is perhaps a matter of supererogation in this day to emphasize the fundamental nature and importance of the right of trial by jury in criminal cases; or to point out again how carefully the function of the jury in such cases is zealously guarded against any invasion by the trial judge. "In jury cases, the jury are the sole and exclusive judge of, or they have the exclusive province to find, the facts, and the trial court cannot interfere with their exercise thereof. It is improper and outside the proper functions of the court for it to assume or usurp the proper functions of the jury in determining issues of fact; it is not authorized to pass on and decide questions of fact, or take a question of fact away from the jury and decide it itself, or indicate to the jury that some material facts, not admitted at the trial, are established beyond controversy, or declare or deny the existence of any fact bearing on the issues which is in contest." 23A C.J.S., Criminal Law, Section 1120, page 270. To the same effect, see 31 Am. Jur., Jury, Section 15, page 22. In 31 Am. Jur., Jury, Section 7, page 13, it is pointed out that the right to trial by

jury is immemorial; that it was brought from England to this country by the colonists and "it has become a part of the birthright of every free man." The same section quotes the following language from Magna Carta: "* * * no freeman shall be hurt, in either his person or property * * *, unless by lawful judgment of his peers or equals, or by the law of the land * * *." See also *State* v. *Stalnaker*, 138 W. Va. 30, pt. 1 syl., 76 S. E. 2d 906.

I challenge anybody to look at the indictment, verdict and sentence in this case and determine whether the prisoner is now confined in consequence of the provision for a minimum sentence of twenty years or the provision for a minimum sentence of ten years. Whatever it may mean to anybody else, it means a difference of ten years to the prisoner. Could it be that upon proper indictment and instructions, the jury by its verdict would have provided for the minimum sentence of ten years, but that the trial judge in this case felt that the minimum sentence should be twenty years?

It is not only important to the prisoner to know whether his minimum sentence is ten years; but it is also a matter of grave importance to the warden of the penitentiary and particularly to the parole authorities of this state.

I believe that the majority opinion and this dissent point up the unsatisfactory nature of the statute itself and perhaps emphasize the need for its reappraisal by the legislature. The inducements which prompted the inclusion of a minimum penalty of twenty years, and the still more favorable penalty of a minimum of ten years, are readily apparent. And yet, since no maximum sentences are provided, these inducements become comparatively meaningless. The statute would permit a judge, if he were so willed, to impose a sentence of life imprisonment in any one of the three factual categories defined by the statute. The only legal limitation in that respect is embodied in Article III, Section 5 of the Constitution of West Virginia which, in part, is as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties

shall be proportioned to the character and degree of the offense." See *Ex Parte Garrison,* 36 W. Va. 686, 689, 15 S. E. 417, 418; *State* v. *McKain,* 56 W. Va. 128, 131, 49 S. E. 2d 20, 21; *State* v. *Woodward,* 68 W. Va. 66, 69 S. E. 385; *State* v. *Painter,* 135 W. Va. 106, 63 S. E. 2d 86; *State* v. *Burdette,* 135 W. Va. 312, 63 S. E. 2d 69. It may be that the constitutional provision quoted above presents another cogent reason for the proposition that the record in this case (the indictment, verdict and judgment) should disclose on its face for which offense, or degree of an offense, the prisoner is confined.

For reasons stated, I would hold that the indictment, verdict and sentence are void; and I would discharge the accused from his present imprisonment without prejudice to any rights the state may have to proceed against him further in the circumstances of this case.